```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  9/30/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALLIANT INSURANCE SERVICES, INC. et al.,

Plaintiffs,

-against-

RESILIENCE INSURANCE ADVISORY CORP., et al.,

Defendants.

---

23-CV-09277 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Alliant Insurance Services, Inc. ("Alliant") and its subsidiary Harbor Group Consulting, LLC ("Harbor") (together, "Plaintiffs") bring this action against Harbor's former Chief Operating Officer Emily Rasmussen ("Rasmussen") and Harbor's competitor Resilience Insurance Advisory Corp. ("Resilience") (together, "Defendants"). Plaintiffs allege that Rasmussen duplicitously orchestrated the layoff of certain Harbor employees who, along with Rasmussen, then joined the newly founded Resilience and stole Harbor's clients by misleading them into believing that the two companies were affiliated. As to Resilience, Plaintiffs bring claims for false designation of origin and unfair competition under Section 43(a) of the Lanham Act; tortious interference with contractual relations; tortious interference with business relations; unjust enrichment; common law unfair competition; and copyright infringement. As to Rasmussen, Plaintiffs bring two claims for breach of contract—one for breach of a client non-solicitation provision and one for breach of an employee non-solicitation provision; and claims for tortious interference with contractual relations; tortious interference with business relations; breach of fiduciary duties; unjust enrichment; and copyright infringement.

Pending before the Court are separate motions by Resilience and Rasmussen to dismiss Plaintiffs' action in its entirety. For the reasons that follow, each motion is GRANTED IN PART AND DENIED IN PART. The claims against Rasmussen for breach of contract, breach of fiduciary duty, tortious interference with business relations, and copyright infringement survive, and the claim against Rasmussen for unjust enrichment survives as pled in the alternative. The claim against Resilience for copyright infringement also survives. The remaining claims are dismissed.

**BACKGROUND**

## I.    RELEVANT FACTS[1]

Alliant is a commercial retail insurance brokerage firm based in California. Am. Compl. ¶¶ 6, 15. Harbor, limited liability company and wholly owned subsidiary of Alliant since 2018, is a provider of insurance advisory services related to commercial real estate loans. *Id.* ¶¶ 2, 7, 16. Rasmussen was a Harbor employee prior to its acquisition by Alliant, and remained so until she resigned in July 2023. *Id.* ¶¶ 18, 38.

Through her employment with Harbor, Rasmussen acquired certain incentive compensation units ("ICUs") before 2018. *Id.* ¶ 18. When Alliant acquired Harbor, Rasmussen exchanged her ICUs for a transaction bonus. *Id.* That exchange entailed the execution of an "ICU Cancellation and Bonus Award Agreement" on August 23, 2018. *Id.* ¶¶ 18–19. The agreement contained a two-year client non-solicitation provision (the "Client Non-Solicitation Covenant") and a two-year employee non-solicitation provision (the "Employee Non-Solicitation Covenant"). *Id.* ¶¶ 24–25. Alliant took control over Harbor on October 1, 2018. *Id.* ¶ 19. On

---

[1] The following facts are taken from the allegations in the Amended Complaint ("Am. Compl."), Dkt. No. 36, and are assumed true for the purpose of resolving this motion.

October 3, 2018, Rasmussen executed a Confidentiality and Non-Solicitation Agreement (the "Confidentiality Agreement") with Alliant and Harbor that incorporates by reference the Client Non-Solicitation Covenant and the Employee Non-Solicitation Covenant. *Id.* ¶ 22.

Over the next five years, Rasmussen rose through the ranks at Harbor and ultimately became the Chief Operating Officer ("COO"), regarded by some as Harbor's "Number Two". *Id.* ¶ 20. As COO, Rasmussen was "responsible for reporting Harbor's present and forecasted financial performance to certain executives at Alliant." *Id.* ¶ 27. On May 15, 2023, Rasmussen reported to Alliant executives that the status and projected long-term performance of Harbor's market was "very poor" and proposed that Harbor undertake a reduction in force ("RIF"). *Id.* ¶ 28–29.[2] The proposal was adopted, though the Amended Complaint does not allege the circumstances surrounding that decision. Rasmussen decided that the RIF would occur on June 23, 2023, and personally selected the employees that would be let go. *Id.* ¶ 31.

In the lead up to the RIF, Rasmussen allegedly coordinated the transition of Harbor employees and clients to Resilience, a competitor firm founded in June 2023 that, like Harbor, provides insurance advisory services related to commercial real estate loans. *Id.* ¶¶ 2, 8, 32, 44. The Amended Complaint refers to several emails between Rasmussen and clients of Harbor that intimate a planned transition of business from Harbor to Resilience. For example, on June 15, 2023, eight days before the RIF, Rasmussen emailed "Client A" attaching a "w9 and corporate cert for Resilience" and stating that certain members of the "Harbor team you work with regularly on deals will remain and continue to take engagements as usual, at Harbor, until we've confirmed that you're ok for us to transition them to the new entity." *Id.* ¶ 33. The next day,

---

[2] The Court recognizes that Defendants vigorously dispute many of the factual allegations in the Amended Complaint. As discussed further below, with limited exceptions the Court cannot consider those disputes on a motion to dismiss.

Rasmussen sent an email advising "Client B" that Harbor had "some unanticipated structural changes" and stating that "we have you covered, but there's some logistics involved." *Id.* ¶ 34.

Rasmussen emailed the same Client B on June 21, 2023, two days before the RIF, attaching a statement of work that she described as "identical in form and substance to the prior agreement with the exception of our name," providing what she described as a "comprehensive deal status sheet showing any consultant assignments that are being changed as a result of the RIF this Friday," and providing new email addresses for what she described as the "initial [R]esilience team handling" Client B's work. *Id.* ¶ 35. That "initial [R]esilience team" comprised Harbor employees that Rasmussen had selected for the RIF. *Id.* ¶¶ 36–37. Further, Rasmussen noted in her email that "[t]here are five members who will remain for a tail period at Harbor to ensure there is no disruption to deals that are deep in process . . . . Once you are thoroughly settled[,] they will migrate to the Resilience team." *Id.* ¶ 36.

Plaintiffs allege that Rasmussen continued to orchestrate the transition of Harbor clients to Resilience after the RIF. Mere days after the RIF, Rasmussen instructed Harbor employees to turn away engagements because Harbor was understaffed. *Id.* ¶¶ 40–41. She did not inform Alliant executives that she instructed Harbor staff to turn away clients. *Id.* ¶ 41. Allegedly due to Rasmussen's instruction, Harbor turned down at least one new engagement. *Id.* ¶ 41. At the same time, while still a Harbor employee, Rasmussen continued working on behalf of Resilience to transition Harbor engagements to Resilience. On June 28, 2023, an account manager at "Client C" wrote in an email to Rasmussen that Client C's staff "is now receiving communication under the new Resilience name which [they] did not expect so soon." *Id.* ¶ 46. The account manager further wrote "I believe you had stated that with the [Harbor] work it's business as usual, correct? Regardless of the company signature name we should continue to

process the work under [Harbor] accounts until you advise otherwise, correct?"  *Id.* ¶ 46.  On June 29, 2023, an executive director at "Client D" emailed Rasmussen to inform her that Client D's "initial application to start a SPAR just got rejected [because] there is no website[.]"  *Id.* ¶ 47.  Rasmussen replied, "Do you mean because there is no such site or because it isn't built out? I just checked the landing page and it works, just has the logo for now.  If we need to build it I can do it over the weekend."  *Id.*

In the end, at least twenty-two employees that Rasmussen selected for the RIF subsequently joined Resilience.  *Id.* ¶ 38.  Rasmussen herself submitted her resignation on July 3, 2023, ten days after the RIF, and left the firm on July 11, 2023.  *Id.* ¶ 38.  The Amended Complaint references additional communications after Rasmussen's departure reflecting former Harbor employees' solicitation of clients.  On July 31, 2023, a senior advisor at "Client E" emailed Harbor personnel noting, "We were notified that there was a *mass exit* of Harbor employees after Alliant took over.  They are forming a company called Resilience.  They are now soliciting our business.  We are concerned if there is any issue that we should be aware of." *Id.* ¶ 49.  On August 7, 2023, a vice president of "Client F" wrote that a former employee was "still emailing other carriers for this project, but she's at Resilience Insurance Analytics" and asked, "Should I be concerned that [the former employee] is asking for information on my clients and trying to redirect communications to her new employer?"  *Id.* ¶ 50.

Plaintiffs assert that the actions and representations of Rasmussen and other defectors confused Harbor's clients and other market participants as to the relationship between Harbor and Resilience.  On September 18, Amber Walker, a Resilience employee and former Harbor employee, emailed a vice president at an insurance brokerage and risk management service firm regarding a deal that Harbor had been handling.  *Id.* ¶ 51.  Walker wrote that "[w]e will be

handling the environmental portion of this deal going forward." *Id.*  The broker responded, "I understand your company has undergone some rebranding," and later noted, "Per our conversation, I understand your company has undergone some rebranding, so this is the reason for the name change." *Id.* (emphasis omitted)  On September 19, 2023, an associate director at "Client G" asked a Resilience employee whether Client G would receive an invoice from Harbor or Resilience. *Id.* ¶ 57.  The Resilience employee changed the subject line of the email from "Harbor Insurance Review" to "Resilience Insurance Review" and responded that the invoice would come from Resilience. *Id.*  Furthering the confusion, Resilience allegedly copied the look, feel, and substance of Harbor's website. *Id.* ¶ 55.  It also allegedly copied the look, feel, and substance of Alliant's offer letter and Harbor's statement of work. *Id.* ¶ 56.

Harbor now struggles find capacity to meet client demand and continues to lose clients to Resilience.  On December 20, 2023, Client A emailed a Harbor consultant to request Harbor to "transfer its account access for all [its] existing life of loan monitoring to Resilience." *Id.* ¶ 53.  On January 22, 2024, a client contacted a Harbor analyst because he could not reach his usual contact, who now works for Resilience. *Id.* ¶ 54.

## II.    PROCEDURAL HISTORY

Plaintiffs filed this action on October 20, 2023, Dkt. No. 1, and the case was assigned to Judge Mary Kay Vyskocil.  Pursuant to Judge Vyskocil's individual rule requiring parties to request a pre-motion conference before filing any motion to dismiss, Defendants each submitted a letter on January 3, 2024, explaining the bases for their anticipated motions to dismiss and requesting that the Court hold a pre-motion conference.  Dkt. Nos. 27, 28.  On January 8, 2024, Plaintiffs filed responses to Defendants' letters.  Dkt. Nos. 29, 30.  The next day, without holding a pre-motion conference, the Court granted Defendants leave to file their motions to dismiss.

Dkt. No. 31.  Before Defendants filed their motions, Plaintiffs moved for leave to amend their

complaint, which the Court granted.  Dkt. Nos. 32, 33.  Plaintiffs then filed their Amended

Complaint on February 13, 2024.  Dkt. No. 36.  The case was reassigned to the undersigned on

February 23, 2024.  Pursuant to Judge Vyskocil's prior ruling, Dkt. No. 31, on March 29, 2024,

Defendants each filed motions to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure.

## DISCUSSION

### I.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).[3]  A claim is facially plausible "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where,

as a matter of law, "the allegations in a complaint, however true, could not raise a claim of

entitlement to relief."  *Twombly*, 550 U.S. at 558.  The Court must assume all well-pled facts to

be true, "drawing all reasonable inferences in favor of the plaintiff."  *Koch v. Christie's Int'l*

*PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76,

79–80 (2d Cir. 1993) ("[A]ll allegations are construed in the light most favorable to the plaintiff

and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by

the moving party.").  However, the Court need not accept conclusory assertions.  *Whiteside v.*

*Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

On a Rule 12(b)(6) motion, a court "may review only a narrow universe of materials." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). That universe includes "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021). Here, the Court may consider the agreements and communications attached as Exhibit 1 through 8 to the Amended Complaint, because they are incorporated by reference in and integral to the Amended Complaint. *See* Dkt. Nos. 36-1 to 36-8.

## II.    PLAINTIFFS FAIL TO PLEAD A FALSE DESIGNATION OF ORIGIN CLAIM UNDER THE LANHAM ACT

Plaintiffs' false designation of origin claim[4] fails because the conduct alleged in the Amended Complaint falls outside the ambit of the Lanham Act. The Amended Complaint's narrative, told primarily through email excerpts, permits a reasonable inference of misconduct that could entitle Plaintiffs to relief under some causes of action, as explained *infra*. But, notwithstanding their inflammatory characterizations and conclusory inferences, Plaintiffs fail to fit the alleged misconduct into the elements of a Lanham Act claim.

Plaintiffs assert a claim against Resilience for "False Designation of Origin and Unfair Competition [under] Section 43(a) of the Lanham Act." Am. Compl. at 20. "[C]ourts have made clear that under [Section] 43 of the [Lanham] Act, there is no specific federal cause of action for unfair competition." *Camelot SI, LLC v. ThreeSixty Brands Grp. LLC*, 632 F. Supp. 3d 471, 481 (S.D.N.Y. 2022) (quoting *Sussman-Automatic Corp. v. Spa World Corp*, 15 F. Supp. 3d 258, 272 (E.D.N.Y. 2014)). "Instead[,] unfair competition under the Lanham Act is a

---

[4] This claim, in the First Cause of Action, is asserted only against Defendant Resilience. Am. Compl. at 20.

category of claims consisting primarily of causes of action for false designation of origin and false advertising." *Id.*

Plaintiff's Lanham Act claim falls into the category of false designation of origin, which is sometimes characterized as false association. *See Lehrman v. Lovo, Inc.*, No. 24-CV-03770 (JPO), 2025 WL 1902547, at *7 (S.D.N.Y. July 10, 2025). A person is liable for false designation of origin if the person:

> on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another . . . .

15 U.S.C. § 1125(a)(1). "This cause of action is broad and has been interpreted to cover conduct including infringement of an unregistered mark, trade dress infringement, passing off, reverse passing off, and false designation of geographic origin—'all of which simply describe different methods of trademark infringement.'" *Lerhman*, 2025 WL 1902547, at *7 (quoting *Red Rock Sourcing LLC v. JGX LLC*, No. 21-CV-1054, 2024 WL 1243325, at *22 n.10 (S.D.N.Y. Mar. 22, 2024)).

To survive a motion to dismiss for failure to state a claim for false designation of origin, courts in this Circuit have held that a complaint must plausibly allege that "(1) plaintiff owns a valid mark entitled to protection under the Lanham Act; (2) defendant used the protected mark in commerce, without plaintiff's consent; and (3) defendant's use of that mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Camelot SI, LLC v. ThreeSixty Brands Grp. LLC*, 632 F. Supp. 3d 471, 480 (S.D.N.Y. 2022) (quoting *Lopez v. Nike, Inc.*, 2021 WL 128574, at *4 (S.D.N.Y. Jan. 14, 2021)). This test is based on the analogy

between false designation of origin claims and trademark claims.  *See Jackpocket, Inc. v. Lottomatrix NY LLC*, 645 F. Supp. 3d 185, 228 (S.D.N.Y. 2022) ("The standards governing claims for unfair competition, under Section 43(a) of the Lanham Act, and for trademark infringement, under Section 32, are substantially the same.").   Consequently, this formulation aptly applies to false designation of origin claims that are based on infringement of ordinary (albeit unregistered) trademarks, such as the use of a counterfeit logo.

However, "[i]n addition to prohibiting improper uses of a trade name or mark, [Section 43(a) of] the Lanham Act prohibits the use in commerce of any 'false designation of origin, false or misleading description of fact, or false or misleading representation of fact'" that is likely to cause confusion as to the origin of goods or services.  *Gen. Sec., Inc. v. Com. Fire & Sec., Inc.*, No. 17-CV-01194 (DRH), 2018 WL 3118274, at *6 (E.D.N.Y. June 25, 2018).  Therefore, some courts have adopted slightly different formulations of the Section 43(a) pleading standard that more generally capture infringement by deceit or misrepresentation: "a complaint must allege that (1) goods or services are involved; (2) interstate commerce is affected; and (3) a false designation of origin or a false description or representation with respect to those goods or services in commerce likely to cause confusion, mistake, deception, or which is a misrepresentation."  *Genial Holding Ltda. v. Brasil Plural Sec., LLC*, No. 24-CV-05780 (PAE), 2025 WL 1446370, at *4 (S.D.N.Y. May 20, 2025); *see also Portkey Techs. Pte Ltd. v. Venkateswaran*, No. 23-CV-05074 (JPO), 2024 WL 3487735, at *2 (S.D.N.Y. July 19, 2024) ("To survive a motion to dismiss, a plaintiff must plausibly allege that the defendant (1) used a designation or false designation of origin; (2) in interstate commerce; (3) in connection with goods or services; (4) when the designation was likely to cause confusion mistake, or deception as to the affiliation, connection, or association of the defendant with another person or the origin,

sponsorship, or approval of the defendant's goods, services, or commercial activities by another

person; and (5) that the plaintiff has been or is likely to be damaged by those acts.").

As explained below, Plaintiffs' Lanham Act claim fails under any accepted formulation

of the relevant pleading standard. While Plaintiffs allege that they have valid marks, they

outright fail to allege use of those marks. And while they summarily assert that Resilience

misrepresented the origin of its services, they fail to allege the falsity of any representation, or, at

the very least, fail to allege the use of any false representations in commerce.

### A.  Plaintiffs Sufficiently Allege Valid Marks

Plaintiffs have alleged that they own valid marks entitled to protection, specifically

"Alliant" and "Harbor," which fall under the category of trade names. "A trade name, as defined

by the Lanham Act, is 'any name used by a person to identify his or her business' and is

protected under the Lanham Act based upon the same criteria applied for 'trademarks.'" *Gluco*

*Perfect, LLC v. Perfect Gluco Prods., Inc.*, No. 14-CV-01678 (KAM) (RER), 2014 WL

4966102, at \*18 n.16 (E.D.N.Y. Oct. 3, 2014) (quoting *deVere Grp. GmbH v. Opinion Corp.*,

877 F.Supp.2d 67, 69 n.2 (E.D.N.Y. 2012)); *see also Morgans Grp. LLC v. John Doe Co.*, No.

10-CV-05225 (KMW), 2012 WL 1098276, at \*4 (S.D.N.Y. Mar. 31, 2012) ("Although the

parties have referred to the marks at issue as 'trademarks,' they are more properly characterized

as 'trade names,' which are names used to identify businesses as opposed to the goods or

services those businesses sell.").

At this stage, the Court must credit Plaintiffs' allegations that consumers recognize

"Alliant" and "Harbor" as source identifiers and associate services provided under those trade

names with the namesake companies. *See* Am. Compl. ¶ 59. Plaintiffs have thus sufficiently

alleged that "Alliant" and "Harbor" are valid marks entitled to protection. *See  A.V.E.L.A., Inc.*

*v. Est. of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 212 (S.D.N.Y. 2015) (noting that

11

"determining whether a descriptive mark has acquired secondary meaning [and is thus entitled to protection under the Lanham Act] is a fact-intensive inquiry" that "generally should not—and here cannot—be resolved on a motion to dismiss.").

### B.    Plaintiffs Do Not Allege Use in Commerce of Plaintiff's Marks or False Representations

Nowhere does the Amended Complaint allege that Resilience actually used the "Harbor" or "Alliant" trade names, so Plaintiffs' false designation of origin claim requires Plaintiffs to allege that Resilience used "in commerce" a "false designation of origin, false or misleading description of fact, or false or misleading representation of fact" that is likely to cause confusion as to the affiliation of Resilience with Harbor or Alliant or as to the origin or Resilience's services.  12 U.S.C. § 1125.

Plaintiffs assert that Resilience misrepresented the source of its services by falsely suggesting the company was connected to or a continuation of Harbor.  Am. Compl. ¶ 60 ("In connection with Resilience's offering of its services in interstate commerce, Resilience's employees have used false designations of origin and false and misleading representations of fact . . . .").  Plaintiffs could state a claim for false designation of origin under such a theory, so long as they sufficiently allege the use in commerce of false or misleading representations.  *See, e.g., Gen. Sec., Inc.*, 2018 WL 3118274, at *6 (denying motion to dismiss where the plaintiff "allege[d] two instances where [its former employee] held himself out as an agent of [Plaintiff's company] in an attempt to advertise and sell alarm contracts for [a competitor]" and alleged that the former employee "gave one of Plaintiff's customers lawn signs bearing [Plaintiff's trademark] in the course of their attempts to sell alarm services to prospective clients.").  Here, however, Plaintiffs do not sufficiently allege the use of false representations in commerce by the Defendants or any of their agents.

Based on email communications that contain no allegedly false statements, Plaintiffs merely assert in conclusory fashion that Resilience must have misrepresented its relation to Harbor. The various communications referenced in the Amended Complaint and summarized above, *see supra* Section I, reflect the transition of Harbor clients to Resilience, as well as occasional confusion among clients or other business associates stemming from that transition. These allegations could potentially suffice to plead the confusion element of a false designation of origin claim. But Plaintiffs improperly rely on this alleged client confusion to bootstrap additional allegations that Resilience falsely represented its connection to Harbor. *See 1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 412 (2d Cir. 2005) ("[T]his rationale [that conduct constitutes 'use' because it causes customer confusion] 'puts the cart before the horse.' Not only are 'use,' 'in commerce,' and 'likelihood of confusion' three distinct elements of a trademark infringement claim, but 'use must be decided as a threshold matter because, while any number of activities may be 'in commerce' or create a likelihood of confusion, no such activity is actionable under the Lanham Act absent the 'use' of a trademark [or a false representation].""). Plaintiffs bear the burden to allege that Resilience used false representations in commerce, and that the likely result is confusion. Instead, Plaintiffs allege client confusion and then assert that Resilience must have used misrepresentations in commerce. That leap is too conclusory for the Court to accept. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *see also id.* at 678 ("[A] complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (quoting *Twombly*, 550 U.S. at 557)); *id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.").

13

Plaintiffs emphasize one email that purportedly shows how a Resilience employee falsely represented to "Affiliate A" that Resilience was a "rebranding" of Harbor. Am. Compl. ¶¶ 51–52 (referencing an email from a vendor to Amber Walker that Plaintiffs argue is evidence of what Amber Walker may have said to the vendor). Even assuming that Plaintiffs adequately allege, by reference to that email, that Resilience made a false representation, the allegation does not save Plaintiffs' false designation of origin claim because the Amended Complaint does not adequately allege that Resilience used the false representation in commerce. Under the Lanham Act, a mark is deemed to be "used in commerce" if it is "used or displayed in the sale or advertising of services and the services are rendered in commerce." 15 U.S.C. § 1127. There is nothing in the Amended Complaint that connects the alleged "rebranding" misrepresentation—even assuming that the email's reference to "per our conversation" supports the inference that the Resilience employee used or suggested that phrasing—to the sale or advertising of Resilience's services. Plaintiffs do not allege that any clients were an audience to the misrepresentation or that Harbor's unspecified business relationship with "Affiliate A" had any bearing on the sale or advertising of Harbor's services (or those of Resilience). It is true that the definition of "use in commerce" is broad, and "[a] plaintiff is not required to demonstrate that a defendant made use of the mark in any particular way." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 305 (2d Cir. 2013), but the Court cannot set aside the plain textual requirement that the use be "in the sale or advertising of services." *See Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, No. 10-CV-03314, 2018 WL 2084168, at *6 (S.D.N.Y. May 1, 2018) (dismissing Lanham Act claim where plaintiffs did not allege that defendants' use of a mark "was done to elicit services"). Accordingly, the Lanham Act claim in the First Cause of Action must be dismissed.

III.   **PLAINTIFFS FAIL TO PLEAD A COMMON LAW CLAIM FOR UNFAIR COMPETITION**

The Eighth Cause of Action in the Amended Complaint alleges unfair competition under New York common law against Resilience only.  "The legal standards for unfair competition under New York law are . . . 'virtually identical' to the standards for trademark infringement and unfair competition under the Lanham Act, except that the New York common law claim[] 'require[s] an additional showing of bad faith.'"  *Pinkfong Co., Inc. v. Alibaba.com Singapore E-Com. Pte. Ltd.*, No. 23-CV-10967 (DEH), 2025 WL 934905, at *3 (S.D.N.Y. Mar. 27, 2025) (quoting *Lopez v. Bonanza.com, Inc.*, No. 17-CV-08493 (LAP), 2019 WL 5199431, at *17 (S.D.N.Y. Sept. 30, 2019)); *see also GCCA, LLC v. MACCG, LLC*, No. 21-CV-05022 (JGK), 2024 WL 837883, at *14 (S.D.N.Y. Feb. 28, 2024) ("To prevail on its claim of unfair competition under New York common law, [the plaintiff] must show the likelihood of confusion and that the defendant acted in bad faith.").  "Thus, courts have concluded that where a plaintiff has 'failed to prove his Lanham Act claims, his New York common law trademark and unfair competition claims must also be dismissed.'"  *Reveron v. Zumiez, Inc.*, No. 23-CV10114 (JGLC) (GWG), 2025 WL 2472752, at *8 (S.D.N.Y. Aug. 28, 2025) (quoting *Lopez v. BigCommerce, Inc.*, No. 16-CV-08970 (JPO), 2017 WL 3278932, at *4 (S.D.N.Y. Aug. 1, 2017)).  Since Plaintiffs have failed to state a claim under the Lanham Act, they necessarily fail to state a claim for unfair competition under New York law, and the Eighth Cause of Action must be dismissed.

**IV.   PLAINTIFFS STATE CLAIMS AGAINST RASMUSSEN FOR BREACH OF CONTRACT**

Drawing all reasonable inferences in Plaintiffs' favor, the Amended Complaint states claims for breach of both the Client Non-Solicitation Covenant and the Employee Non-Solicitation Covenant sufficient to survive a motion to dismiss.

"To state a claim in federal court for breach of contract under New York[5] law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996); *see also Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019). The Amended Complaint alleges that Rasmussen breached the Client Non-Solicitation Covenant in the Confidentiality Agreement by soliciting current Harbor clients and facilitating the transfer of their business to Resilience. *See* Am. Compl. ¶¶ 33–34, 44–54; 70–72. Additionally, it alleges that Rasmussen breached the Employee Non-Solicitation Covenant in the Confidentiality Agreement by recruiting current Harbor employees to work for Resilience. *See id.* ¶¶ 32–38; 78–79. While these same alleged facts, including the communications between Rasmussen and Harbor clients and employees, fail to create a plausible inference that Resilience falsely designated the origin of its services for the purpose of a Lanham Act claim, they undoubtedly create a plausible inference that Rasmussen breached the Confidentiality Agreement, under the standards that must govern a motion to dismiss. *See Spotlight Ticket Mgmt., Inc. v. Daigle*, No. 23-CV-10035, 2024 WL 3966900, at *7 (S.D.N.Y.

---

[5] "The parties' briefs assume that New York law governs this case and such implied consent is, of course, sufficient to establish the applicable choice of law." *Green Tree Servicing, LLC v. Christodoulakis*, 689 F. App'x 66, 70 n.1 (2d Cir. 2017).

Aug. 28, 2024) (even where "[plaintiff's] specific allegations of [defendant's] competitive conduct are sparse, they suffice to state a claim for breach of contract.").

Rasmussen argues that the various communications involving Rasmussen do not amount to the solicitation of clients or employees, *see* Dkt. No. 46-3 ("Rasmussen Motion") at 8–10, 13–14, but her arguments raise factual questions that are inappropriate to address at this stage. Likewise, the Court declines to address at this stage whether the restrictive covenants are unenforceable for their purported overbreadth. *See Cartiga, LLC v. Aquino*, No. 24-CV-01014, 2025 WL 388804, at *10 (S.D.N.Y. Feb. 4, 2025) (declining to decide on a motion to dismiss whether a non-solicitation restrictive covenant was overbroad because "[a]ssessing whether such a covenant is reasonable in general presents a 'fact-bound inquiry'") (quoting *Spotlight Ticket Mgmt., Inc. v. Daigle*, No. 23-CV-10035 (JPO), 2024 WL 3966900, at *8 (S.D.N.Y. Aug. 28, 2024)); *see also Twitchell Tech. Prods., LLC v. Mechoshade Sys., LLC*, 208 N.Y.S.3d 657, 671 (2d Dep't 2024) ("[A]s with overly broad restrictive covenants in employment agreements, in order to determine whether an overly broad restrictive covenant in an ordinary commercial agreement is capable of partial enforcement, courts should conduct a case specific analysis, which likely requires a more developed record than is available at this stage of the litigation.").

For similar reasons, the court rejects Rasmussen's judicial estoppel arguments at this stage. To the extent Rasmussen argues for the application of judicial estoppel because the "problem is not *factual* but *legal* inconsistency," Dkt. No. 49 at 2, Rasmussen misapprehends the doctrine. *See Wells Fargo Bank, N.A. v. United States Life Ins. Co. in City of New York*, No. 22-CV-08606 (JPC), 2025 WL 2220948, at *15 (S.D.N.Y. Aug. 4, 2025) ("Judicial estoppel typically only applies to inconsistent factual positions, not to issues of law.") (quoting *In re*

*Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, Nos. 05-MD-01720 (MKB), 20-CV-02394 (MKB), 2024 WL 4224160, at *8 (E.D.N.Y. Sept. 18, 2024) (collecting cases)).

Nor does the Court accept Rasmussen's argument that Alliant, as a California corporation, is precluded from enforcing the Agreement against Rasmussen under California's Business and Professions Code Section 16600, which prohibits post-employment non-solicitation provisions. *See* Rasmussen Mot. at 10. The Agreement provides that "it will be interpreted, construed and enforced under the laws of the state in which Employee resides." Dkt. No. 36-2 at 4. Rasmussen resides in New York. Am. Compl. ¶ 9. Thus, New York law applies. California's prohibition on post-employment non-solicitation agreements does not apply extraterritorially to a contract governed by New York law and enforced against a New York employee. *See Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 88, 98 (S.D.N.Y. 2021) (enforcing non-solicitation provision after recognizing the conflict between California and New York law with respect to non-solicitation agreements and determining, under a separate analysis not necessary here, that New York law governed the relevant contract).[6]

Accordingly, Rasmussen's motion to dismiss the Second and Third Causes of Action is denied.

---

[6] In addition, the Confidentiality Agreement defines "Alliant" to include its subsidiaries, and it remains unclear whether Plaintiff Harbor, which is not incorporated in California, could also independently enforce the agreement against Rasmussen even if Rasmussen were correct that Alliant is statutorily barred from enforcement.

## V.    PLAINTIFFS STATE A CLAIM AGAINST RASMUSSEN FOR BREACH OF FIDUCIARY DUTY

Plaintiffs bring a claim against Rasmussen for "Breach of Fiduciary Duties" and also allege that Rasmussen is a faithless servant. Am. Compl. at 30 (Sixth Cause of Action). "New York courts are far from clear regarding the contours of—and interplay between—a claim for breach of fiduciary duty and the faithless servant doctrine." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 242 (2d Cir. 2020). Some courts applying New York law have analyzed claims for breach of the duty of loyalty and claims brought under the faithless servant doctrine as doctrinally distinct, while others have understood them to be essentially the same. *Ebel v. G/O Media, Inc.*, No. 20-CV-07483 (PAE), 2021 WL 2037867, at *4 (S.D.N.Y. May 21, 2021). The Court will analyze this cause of action as a claim for breach of fiduciary duty, brought under the faithless servant doctrine. Taking their allegations as true, Plaintiffs have adequately pled such a claim.

To state a claim for breach of fiduciary duty under New York law, a plaintiff must show (1) the existence of a fiduciary duty; (2) a knowing breach of that duty; and (3) resulting damages. *See Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011) (citing *Barrett v. Freifeld*, 883 N.Y.S.2d 305, 308 (2d Dep't 2009)). "Under New York law, an employee owes a duty of good faith and loyalty to his employer." *Design Strategies, Inc. v. Davis*, 384 F. Supp. 2d 649, 659 (S.D.N.Y. 2005), *aff'd sub nom. Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir, 2006). Breach of that duty is actionable as a breach of fiduciary duty. *See Garvey v. Face of Beauty LLC*, 634 F. Supp. 3d 84, 92 (S.D.N.Y. 2022). "A breach of the duty of loyalty 'occurs when a fiduciary commits an unfair, fraudulent, or wrongful act, including misappropriation of trade secrets, misuse of confidential information, solicitation of [an] employer's customers before cessation of employment, conspiracy to bring about mass

resignation of an employer's key employees, or usurpation of the employer's business opportunity.'" *Regency NYC, Inc. v. Atkinson*, No. 23-CV-05479 (JGLC), 2024 WL 4337486, at *6 (S.D.N.Y. Sept. 27, 2024) (quoting *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 227 (S.D.N.Y. 2013)).

"Under the faithless servant doctrine, one who owes a duty of fidelity to a principal and who is faithless in the performance of her services is generally disentitled to recover her compensation, whether commissions or salary." *LifeSci Cap. LLC v. Revelation Biosciences, Inc.*, No. 22-CV-01411 (JGLC), 2024 WL 3634709, at *2 (S.D.N.Y. Aug. 1, 2024) (quoting *Doe v. Solera Cap. LLC*, No. 18-CV-01769 (ER), 2019 WL 1437520, at *9 (S.D.N.Y. Mar. 31, 2019)). "Courts in the Circuit have limited the faithless servant doctrine 'to cases where the employee, acting as the agent of the employer, unfairly competes with his employer, diverts business opportunities to himself or others to the financial detriment of the employer, or accepts improper kickbacks.'" *Id.* at *3 (quoting *Stefanovic v. Old Heidelberg Corp.*, No. 18-CV-02093 (LTS), 2022 WL 3928370, at *7 (S.D.N.Y. Aug. 31, 2022)).

Courts have yet to determine the precise extent of an employee's disloyalty that is required for an employer to recover under the faithless servant doctrine. "'New York courts have used two different standards to determine whether an employee's misbehavior warrants forfeiture,' and the New York Court of Appeals has not resolved which one applies in particular circumstances." *Yukos Cap. S.A.R.L.*, 977 F.3d at 237 (quoting *Phansalkar*, 344 F.3d at 201–02). Both standards derive from decisions of the New York Court of Appeals from the late nineteenth century. The first standard focuses on whether the agent's misconduct was substantial, such that isolated incidents of disloyalty are insufficient. *See Turner v. Konwenhoven*, 100 N.Y. 115, 120 (1885) (stating that that a disloyal employee forfeits promised

compensation only when the "misconduct and unfaithfulness . . . substantially violates the contract of service."). The second standard provides that an agent is disloyal "if he acts adversely to his employer in any part of the transaction, or omits to disclose any interest which would naturally influence his conduct in dealing with the subject of the employment," regardless of whether the misconduct is substantial. *Murray v. Beard*, 102 N.Y. 505, 508 (1886); *see also Robinson v. De Niro*, 739 F. Supp. 3d 33, 122 (S.D.N.Y. 2023) (the *Murray* standard "does not require that the misconduct be substantial to justify forfeiture of compensation—even a single disloyal act may be sufficient."). The distinction between the two standards is irrelevant at this stage of the case because Plaintiffs have plausibly alleged breach of the duty of loyalty under the stricter *Turner* standard. *See Khaldei v. Kaspiev*, 135 F. Supp. 3d 70, 84 (S.D.N.Y. 2015) (finding it unnecessary to resolve the issue because defendant was a faithless servant even under the more stringent standard).

The Amended Complaint makes detailed allegations that Rasmussen coordinated the June 2023 RIF not to address the business needs of Harbor, but to extract certain Harbor employees and more easily transition them to Resilience. Am. Compl. ¶¶ 27–38. Further, it alleges that Rasmussen instructed Harbor employees to turn clients away based on Harbor's diminished capacity—a problem Rasmussen herself allegedly brought about—in an effort to redirect clients to Resilience. *Id.* ¶¶ 39–40. These allegations state a plausible claim that Rasmussen is a faithless servant. *See JAPNA, Inc. v. SELFX Innovations Inc.*, No. 22-CV-10753 (ALC) (RWL), 2024 WL 1250269, at *9 (S.D.N.Y. Mar. 22, 2024) ("An employee who works to undermine or covertly compete with her employer cannot be permitted to retain the benefits of an agency relationship she has betrayed.") (quoting *Miller v. Levi & Korsinsky, LLP*, No. 20-CV-01390 (LAP), 2021 WL 535599, at *6 (S.D.N.Y. Feb. 12, 2021)); *Shamrock Power Sales, LLC v.*

*Scherer*, No. 12-CV-08959 (KMK), 2015 WL 5730339, at *23 (S.D.N.Y. Sept. 30, 2015)

("Courts have found substantial disloyalty where . . . an employee persuaded other employees to

leave and tried to lure customers away . . . .")

Contrary to Rasmussen's arguments, this claim, as pled, is not duplicative of any contract

claim, both because the alleged conduct is broader than that alleged in the contract claim and

because Rasmussen's fiduciary duties arose independently of the Confidentiality Agreement.

*See DFO Glob. Performance Com. Ltd. (Nevada) v. Nirmel*, No. 20-CV-06093 (JPO), 2021 WL

3475596, at *7 (S.D.N.Y. Aug. 6, 2021) ("Plaintiffs' fiduciary breach claim plausibly covers

more than, and thus does not duplicate, the breach of contract claim"); *Murray Eng'g P.C. v.*

*Remke*, No. 17-CV-06267 (KPF), 2018 WL 3773991, at *12 (S.D.N.Y. Aug. 9, 2018) ("Because

Plaintiff has adequately alleged a fiduciary duty that arose independently from the contractual

terms, its breach of fiduciary duty claim is not duplicative of the breach of contract claim.").

Accordingly, Rasmussen's motion to dismiss the Sixth Cause of Action is denied.

## VI.    PLAINTIFFS FAIL TO PLEAD TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

Plaintiffs bring a claim against Rasmussen and Resilience for tortious inference with

contractual relations.  Am. Compl. at 26 (Fourth Cause of Action).  To state a claim under New

York[7] law for tortious interference with a contract, a plaintiff must allege "[1] the existence of a

valid contract between the plaintiff and a third party; [2] the defendant's knowledge of the

contract; [3] the defendant's intentional procurement of the third-party's breach of the contract

without justification; [4] actual breach of the contract; and [5] damages resulting therefrom."

*Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006).  As to the element of breach,

---

[7] Although no party explicitly identifies the governing law for Plaintiffs' tortious interference claims, all parties rely on New York law in their briefing.

"[i]t is imperative that . . . a plaintiff identify the relevant terms of the contract that existed that were breached by defendant." *Generation Next Fashions Ltd. v. JP Morgan Chase Bank, NA.*, 698 F. Supp. 3d 663, 683 (S.D.N.Y. 2023) (quoting *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 791 (S.D.N.Y. 2019)).

Plaintiffs' claim must be dismissed because they do not even identify the contracts at issue, let alone any provisions that were breached or the nature of any alleged breach. They vaguely allege the existence of "contractual agreements between Harbor and its clients" and "contractual agreements existing between (now) former employees of Harbor" and Harbor. Am. Compl. ¶¶ 87, 91. That is not sufficient to state a claim. *See D3 Int'l, Inc. v. AGGF Cosm. Grp. S.p.A.*, No. 21-CV-06409 (LJL), 2023 WL 2390552, at *14 (S.D.N.Y. Mar. 7, 2023) ("It is not enough to describe the contract in general terms, though; it is imperative that, in bringing a tortious interference claim, a plaintiff identify the relevant terms of the contract that existed that were breached by defendant.") (quoting *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 791 (S.D.N.Y. 2019)).

Accordingly, the Fourth Cause of Action's claim for tortious interference with contractual relations is dismissed against both Rasmussen and Resilience.

## VII.    PLAINTIFFS ADEQUATELY PLEAD TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS AS TO RASMUSSEN BUT FAIL TO STATE A CLAIM AGAINST RESILIENCE

The Amended Complaint's Fifth Cause of Action alleges tortious interference with business relations against both Rasmussen and Resilience. Am. Compl. at 28. To state a claim for tortious interference with business relations[8] under New York law, "a plaintiff must show

---

[8] "Various terms are used for this cause of action, such as tortious interference with prospective economic advantage, tortious interference with business relations, and tortious interference with prospective contractual relations. Courts use these terms interchangeably to describe the same tort (with

that (1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Pride Techs., LLC v. Khublall*, No. 21-2225, 2022 WL 17587755, at *1 (2d Cir. Dec. 13, 2022) (quoting *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015)).  To that end, a plaintiff "must specify some particular, existing business relationship through which plaintiff would have done business but for the allegedly tortious behavior." *Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 153 (S.D.N.Y. 2022) (quoting *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 421 (S.D.N.Y. 2013)).  "Conduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship." *Grifols, S.A. v. Yu*, No. 24-CV-576 (LJL), 2025 WL 1826611, at *21 (S.D.N.Y. July 2, 2025) (quoting *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1104 (2004). In addition, the New York Court of Appeals has explained that "'a defendant's conduct must amount to a crime or an independent tort' in order to amount to tortious interference with a prospective economic advantage." *Hernandez v. Kwiat Eye & Laser Surgery, PLLC*, No. 23-7679, 2024 WL 5116365, at *4 (2d Cir. Dec. 16, 2024) (quoting *Carvel*, 818 N.E.2d at 1103). "A defendant who has not committed a crime or independent tort or acted solely out of malice may nevertheless be liable if he has employed 'wrongful means,'" which include "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions" and "extreme and unfair economic pressure." *Friedman v. Coldwater Creek, Inc.*, 321 F. App'x 58, 60 (2d Cir. 2009) (first quoting *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 428

---

the same elements)." *Zaret v. Bonsey*, No. 22-CV-07109 (AT), 2023 WL 6317956, at *5 (S.D.N.Y. Sept. 28, 2023).

24

N.Y.S.2d 628, 406 N.E.2d 445 (1980); and then quoting *Carvel Corp.*, 3 N.Y.3d at 190, 785

N.Y.S.2d 359, 818 N.E.2d 1100); *Kohler Co. v. Signature Plumbing Specialties LLC*, No. 23-

CV-9686, 2024 WL 4880069, at *5 (S.D.N.Y. Nov. 25, 2024) (same).

   Plaintiffs' claim against Resilience fails because the Amended Complaint does not

sufficiently allege that any conduct by Resilience amounted to a crime or independent tort, or

that Resilience otherwise employed wrongful means. This result follows from the Court's earlier

conclusion that the Amended Complaint fails to adequately allege that Resilience used a false

designation of origin or made misrepresentations to Harbor clients. *See CoraMed USA, LLC v.*

*Alexion Pharms., Inc.*, 695 F. Supp. 3d 251, 269 (E.D.N.Y. 2023) (dismissing tortious

interference with business relations claim where the court had already dismissed the predicate

tort claim). As with their Lanham Act claim, Plaintiffs merely point to excerpts of certain

communications and proclaim them to be smoking guns without any additional allegations or

non-conclusory explanations suggesting that those communications in fact contain falsehoods or

that falsehoods can be reasonably inferred from them.

   In contrast, given the Court's determination that Plaintiffs have stated a claim against

Rasmussen for breach of fiduciary duty, the Amended Complaint sufficiently alleges that

Rasmussen's conduct amounted to an independent tort. *See Stardust Monte-Carlo, S.A.R.L. v.*

*Diamond Quasar Jewelry, Inc.*, No. 16-CV-09918 (ER), 2018 WL 1027754, at *5 and n.5

(S.D.N.Y. Feb. 20, 2018) (noting that plaintiffs satisfied the third element of their tortious

interference claim where they "stated a claim for breach of fiduciary duty—i.e., [an] independent

tort—based on the same factual allegations"). The same allegations supporting the fiduciary

breach claim also plausibly state a claim that Rasmussen interfered with Harbor's ongoing

business relationships with Clients A-F, including specific engagements for the provision of

insurance advisory services, by diverting those clients to Resilience through a variety of means.
*See, e.g.,* Am. Compl. ¶¶ 33– 35, 50, 95–101; *see also SlackPass, Inc. v. Frosted, Inc.*, No. 23-
CV-06393 (ER), 2025 WL 1004854, at *17 (S.D.N.Y. Mar. 31, 2025) ("The complaint alleges
that Whop diverted over one hundred customers with whom LaunchPass had long-term
contractual relationships, and had every expectation that those relationships would continue and
grow.").

Rasmussen argues that Plaintiffs fail to allege that she directed conduct toward a third
party. *See* Rasmussen Mot. at 18. But Plaintiffs clearly allege communications directed at
Harbor's clients. *See, e.g.,* Am. Compl. ¶ 33. To the extent Rasmussen argues that Plaintiffs
never *wronged* a third party, she misconstrues the elements of the claim, which provide only that
the conduct resulting in *harm to the business relationship* must be directed at a third party. *See*
*Red Rock Sourcing LLC*, 2024 WL 1243325, at *37 ("[T]he defendant must have 'direct[ed]
some activities towards the third party and convince[d] the third party not to enter into a business
relationship with the plaintiff.'") (quoting *Black Radio Network, Inc. v. NYNEX Corp.*, No. 96-
CV-04138 (DC), 2000 WL 64874, at *4 (S.D.N.Y. Jan. 25, 2000)); *see also Conflict Int'l, Inc. v.
Komorek*, No. 23-CV-02165 (ER), 2024 WL 1347577, at *14 (S.D.N.Y. Mar. 29, 2024) (finding
that conduct was not directed a third party where plaintiffs alleged only that the defendant
"resigned without notice; deleted company data from his [company]-issued devices; damaged
office property; and attempted to poach employees.").

Accordingly, the Fifth Cause of Action's claim for tortious interference with business
relations is dismissed as to Resilience, but the claim against Rasmussen survives.

## VIII.    PLAINTIFFS'S UNJUST ENRICHMENT CLAIM MUST BE DISMISSED AS TO RESILIENCE BUT SURVIVES AS TO RASMUSSEN AS PLED IN THE ALTERNATIVE

The Amended Complaint's Seventh Cause of Action alleges unjust enrichment against both Rasmussen and Resilience.  Am. Compl. at 31.  Under New York law, an unjust enrichment claim requires "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  *Kaye v. Grossman*, 202 F.3d 611, 616 (2d. Cir. 2000).  "Unjust enrichment is not a catchall cause of action to be used when others fail."  *Morgulis v. Bus Patrol Am., LLC*, No. 24-CV-00113 (ER), 2024 WL 3639126, at *7 (S.D.N.Y. Aug. 1, 2024) (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (2012)).  Rather, the cause of action "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  *Sheiner v. Supervalu Inc.*, No. 22-CV-10262 (NSR), 2024 WL 2803030, at *8 (S.D.N.Y. May 28, 2024).  Accordingly, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  *Zama Cap. Advisors LP v. Universal Ent. Corp.*, No. 24-CV-01577 (MKV), 2025 WL 968783, at *24 (S.D.N.Y. Mar. 31, 2025) (quoting *Corsello*, 967 N.E.2d at 1185).

Here, Plaintiffs' unjust enrichment claim against Resilience must be dismissed because it is based on the same factual allegations as its Lanham Act claim and other claims against Rasmussen that have been dismissed, as discussed above.[9]  *See In re Nurture Baby Food Litig.*, No. 21-CV-01217 (MKV), 2025 WL 918927, at *16 (S.D.N.Y. Mar. 26, 2025) ("Where an 'unjust enrichment claim is premised on the same factual allegations as those supporting

---

[9] Indeed, while the Seventh Cause of Action purports to incorporate all prior allegations against both Defendants, it identifies no particular conduct by Resilience that could support a claim for unjust enrichment beyond that alleged for dismissed claims.

Plaintiffs' other claims, and Plaintiffs have not alleged distinct damages with respect to [the unjust enrichment] claim . . . the Court must dismiss Plaintiffs' unjust enrichment claim as duplicative.'") (quoting *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 115 (S.D.N.Y. 2021)).

Again, the analysis differs as to Rasmussen. The unjust enrichment claim against Rasmussen duplicates the allegations supporting Plaintiff's breach of contract claims, which have not been dismissed, and Plaintiffs plead these two claims in the alternative. "A plaintiff may plead an unjust enrichment claim in the alternative 'where there is a dispute over the existence, scope, or enforceability of the putative contract.'" *Yodice v. Touro Coll. & Univ. Sys.*, No. 21-2986, 2024 WL 3466546, at *3 (2d Cir. July 19, 2024)) (quoting *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 263 (2d Cir. 1999)). Here, Rasmussen disputes the enforceability of the Client Non-Solicitation Covenant and the Employee Non-Solicitation Covenant, arguing that the provisions are overbroad. *See* Rasmussen Motion at 3–7; 11–13. Because those provisions are the source of the duties that Rasmussen allegedly breached, and their enforceability is disputed, Plaintiffs may plead an unjust enrichment claim in the alternative against Rasmussen, and the motion to dismiss the Seventh Cause of Action against Rasmussen is denied.

## IX.    PLAINTIFFS STATE A CLAIM FOR COPYRIGHT INFRINGEMENT

The Ninth Cause of Action in the Amended Complaint alleges copyright infringement against both Rasmussen and Resilience. Am. Compl. at 34. "To state a claim for copyright infringement, a plaintiff must allege 'both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant.'" *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001)). Plaintiffs have done so.

The Amended Complaint sufficiently alleges that Harbor owns a valid copyright to the content of the website at www.harborgroupconsulting.com (the "Website"), including its text portions. Am. Compl. ¶ 128. Defendants' only counterargument is that Harbor did not register its copyright to the Website's text until one week before commencing this action, long after the alleged infringement occurred. But that fact plainly does not invalidate Plaintiff's copyright claim. "Registration with the United States Copyright Office is not required for a work to obtain copyright protection, 17 U.S.C. § 408(a), but registration (or preregistration) is a precondition for bringing an infringement action in federal court." *Stauffer v. Trump*, No. 24-CV-05698 (KMW), 2025 WL 1866669, at *2 (S.D.N.Y. July 2, 2025).

"To satisfy the second element, a plaintiff must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's [work]." *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (citing *Yurman Design, Inc.*, 262 F.3d 101, 110 (2d Cir. 2001)). "Because direct evidence of copying is seldom available, a plaintiff may establish copying circumstantially by demonstrating that the person who composed the defendant's work had access to the copyrighted material, and that there are similarities between the two works that are probative of copying." *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 51 (2d Cir. 2003). Here, Defendants do not dispute that Plaintiffs sufficiently allege access, but they do dispute that the text on the two websites is substantially similar. "Though the issue of substantial similarity is frequently a fact issue for jury resolution," *Warner Bros., Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 239 (2d Cir. 1983), the Second Circuit has "held that the issue can be decided as a matter of law, even at the pleading stage, by examining the four corners of the complaint together with the works themselves when 'no reasonable jury, properly instructed, could find that

the two works' are strikingly similar." *Montgomery v. Holland*, 408 F. Supp. 3d 353, 363

(S.D.N.Y. 2019), *aff'd sub nom. Montgomery v. NBC Television*, 833 F. App'x 361 (2d Cir.

2020). That proposition does not help Defendants here, as similarity is readily apparent from the

works. The Amended Complaint's allegations, including the side-by-side comparison of the

websites' text, plausibly show that Resilience's website copied the text of Harbor's, as evidenced

by the parallel phrasing, sentence structure, and paragraph structure. *See* Am. Compl. ¶ 55.

While Defendants may well have viable defenses based on which portions of the text are deemed

"copyrightable," *see* Dkt. No. 45-4 at 23–25, at this stage of the case the Court cannot conclude

that no reasonable jury, properly instructed, could find that the two works are strikingly similar.

The claim is sufficiently plead as to both Resilience and Rasmussen, because the Amended

Complaint plausibly alleges that Rasmussen created the website. *See id.* ¶¶ 47, 129.

Accordingly, Plaintiffs state a claim for copyright infringement against both Defendants and the

motions to dismiss the Ninth Cause of Action are denied.

**CONCLUSION**

For the foregoing reasons, Resilience's motion to dismiss is GRANTED as to the First,

Fourth, Fifth, Seventh, and Eighth causes of action and is DENIED as to the Ninth cause of

action. Rasmussen's motion to dismiss is GRANTED as to the Fourth cause of action and is

otherwise DENIED. The Clerk of Court is respectfully directed to terminate Dkt. Nos. 45 and 46.

Dated: September 30, 2025
      New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge